Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 208 | DATE | 9/21/2000 |
| CASE TITLE | Gilbert Lande vs. Zurich American Ins Co of IL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** We deny plaintiff's motion (Doc 14-1) for summary judgment in its entirety and grant summary judgment (Doc 10-1) in favor of Zurich on all claims.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 22 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 21 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 00 SEP 21 PM 2:44 | | |
| | SCT courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GILBERT LANDE,

    Plaintiff,

vs.

ZURICH AMERICAN INSURANCE
COMPANY OF ILLINOIS,

    Defendant.

00 C 208

DOCKETED
SEP 22 2000

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, we grant summary judgment in favor of defendant on all of plaintiff's claims.

## BACKGROUND

The following facts, set forth in Defendant's Statement of Undisputed Material Facts, are undisputed:

Defendant Zurich American Insurance Company ("Zurich") is a nationwide property and casualty insurance organization. On April 7, 1986, Zurich hired Gilbert Lande. Due to an accident which left him permanently disabled, Lande was unable to



return to work after May 12, 1986. He received salary continuance pay until May 30, 1986, one half month after his last day worked, pursuant to Zurich's medical leave policy. On May 12, 1987, Zurich terminated Lande's employment pursuant to the medical leave policy, which provides that Zurich will terminate an employee if he or she is still on medical leave of absence one year after the employee's last day worked.

Following his termination, Lande filed a claim for benefits accrued under the Zurich Insurance Company Retirement Income Plan (the "Plan"). On April 20, 1988, the Plan paid Lande $162.35, which reflected the lump-sum value of his retirement benefit accrued between April 7 and May 30, 1986.

Approximately ten years later, Lande filed a claim with the Plan Administrator for credit for service - and hence additional pension benefits - for the period May 30, 1986 to the present. On December 4, 1996, the Plan Administrator's designee, Kathleen M. Grover, denied Lande's claim via the Plan's informal review procedure. In a letter communicating the denial to Lande, Grover explained that:

> you did in fact meet some of the requirements necessary to receive any additional service under the Plan, which in your case would be the time that you were out on medical leave, however, you had to have been employed by the Company for at least ten years. Therefore, since you did

not have ten years of service which is the controlling provision, you were not eligible for any additional credited service.

The "controlling provision" to which Grover referred was Article IV, Section 4.03 of the Plan, which provides, in relevant part:

Section 4.03: Additional Credited Service

In addition to Credited Service earned under Section 4.02 a Participant shall also receive Credited Service for:

...

(e)  any period after a Participant has completed ten (10) years of Continuous Service and becomes totally and permanently disabled.

On December 27, 1996, Lande appealed the claim denial and requested a formal review of Grover's decision. His appeal letter argued that he should receive credited hours of service for the ten-plus years during which he had been receiving Social Security disability benefits. Lande's appeal was based on Article 1, Section 1.21, which defines Hours of Service to include "each working day during which the employee is eligible for disability benefits under Title 11 of the Federal Social Security Act."

On January 27, 1997, a second designee of the Plan Administrator, Judith Ekola, denied Lande's appeal. Ekola refused to credit Lande's ten years of eligibility for

- 3 -

social security benefits toward the ten years of "Continuous Service" she stated he would need to receive additional benefits under the Plan.

On January 31, 1997, Lande wrote a letter to Ekola reiterating his claim that although he was not continuously employed for ten years, he should have received credited hours of service based on his receipt of federal disability benefits. Ekola again denied the claim based on the ten-year requirement of section 4.03.

On January 13, 2000, Lande filed suit against Zurich under ERISA Section 502(a)(1)(B). Lande's suit also alleged four common law causes of action for breach of contract, fraud/misrepresentation, and unjust enrichment. There has been no fact discovery in the case. Both parties have now filed motions for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 312, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in

the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id.

The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

For cross-motions for summary judgment, each movant must individually fulfill the stringent requirements necessary to obtain summary judgment under Rule 56, such standards still being applicable. United Transportation Union v. Illinois Central R.R., 998 F. Supp. 874, 880 (N.D. Ill. 1998). By filing cross- motions for summary judgment, the parties do not waive trial on the merits, but each party merely believes that the court should grant it judgment without trial, unless the judge disagrees. Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 230 (7th Cir. 1996). Indeed, upon receipt of cross-motions for summary judgment, the court is not required to grant summary judgment as a matter of law for either side. Brownlee v. City of Chicago, 983 F. Supp. 776, 779 (N.D. Ill. 1997); Boozell v. United States, 979 F. Supp. 670, 674 (N.D. Ill. 1997). Rather, the court will evaluate each motion on its merits, resolving factual

uncertainties and drawing all reasonable inferences against the movant. Brownlee, 983 F. Supp. at 779; Boozell, 979 F. Supp. at 670; United Transportation Union, 998 F. Supp. at 880. It is with these principles in mind that we turn to the merits of the motion before us.

## DISCUSSION

### I. Proper party defendant

Zurich initially moved for summary judgment on the ground that the Plan, and not Zurich, is the proper party defendant. In the interim, Lande has amended the complaint to substitute the Plan as the party defendant. Zurich's summary judgment motion is therefore denied as moot to the extent it is premised on the naming of an improper party defendant.

### II. ERISA claims

#### A. Standard of review of Plan Administrator's eligibility determination

We review a denial of ERISA benefits *de novo* unless the benefit plan confers on the administrator or fiduciary the discretionary authority to determine benefit eligibility or to construe plan terms. Firestone Tire and Rubber Company v. Bruch, 489 U.S. 101, 115 (1989). Under the latter scenario, we apply an arbitrary and capricious standard. Id. There are no "magic words" determining the scope of judicial review of decisions to deny benefits. Mers v. Marriott Int'l Group Accidental Death

& Dismemberment Plan, 144 F.3d 1014, 1020 (7th Cir. 1998). The relevant test in this circuit is whether the plan language "indicates with the requisite if minimum clarity that a discretionary determination is envisaged." Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000).

Accordingly, the Seventh Circuit has found arbitrary and capricious review appropriate where a plan specified that the administrator was "responsible for interpretations of this plan." Chojnacki v. Georgia-Pacific Corp., 108 F.3d 810, 815 (7th Cir. 1997). On the other hand, "the presumption of plenary review is not rebutted by the plan's stating merely that benefits will be paid only if the plan administrator determines they are due, or only if the applicant submits satisfactory proof of his entitlement to them." Herzberger, 205 F.3d at 331. Such wording "does not give the employee adequate notice that the plan administrator is to make a judgment largely insulated from judicial review by reason of being discretionary." Id. at 332.

Here, the Plan explicitly confers upon the Administrator the authority to "determin[e] all questions related to coverage under the plan" and "interpret[] and constru[e] the provisions of the Plan." Although this language does not directly mimic the "safe harbor" provision recently commended to employers in Herzberger, the court in that case emphasized that its suggested language was not mandatory. 205 F.3d at 331. We find that under the holdings in Chojnacki and Herzberger, the Plan "indicates

with the requisite if minimum clarity" that the Plan Administrator has the discretion to construe the terms of the Plan. Consequently, we examine the administrator's decision under the arbitrary and capricious standard of review.

Lande argues that we should review the denial of benefits *de novo* based on the fact that the Zurich Insurance Company served as both the Plan Administrator and the payer of benefits thereunder, and that this dual role creates an inherent conflict of interest. Initially, we must clarify that "a conflict of interest does not change the standard of review we apply to an administrator's decision." Chojnacki, 108 F.3d at 815. Nevertheless, such a conflict "will cause us to give the arbitrary and capricious standard more bite. The more serious the conflict, the less deferential our review becomes." Id. (citation omitted).

Although the Supreme Court has determined that the existence of a conflict of interest is a relevant factor in determining whether there has been an abuse of discretion, Firestone, 489 U.S. at 115, there is significant disagreement among courts as to what qualifies as a conflict of interest on the part of the plan administrator. See 75 N.D.L. Rev. 815, 826-27 (1999). And while the majority of Seventh Circuit cases suggest that the mere fact that a company-sponsored plan allows an insurance company to interpret its own policies does not create an inherent conflict of interest, Mers v. Marriott Int'l, 144 F.3d 1014 (7th Cir. 1998); Cozzie v. Metropolitan Life Ins. Co., 140

F.3d 1104, 1108 (7th Cir. 1998); Chalmers v. Quaker Oats Co., 61 F.3d 1340, 1344 (7th Cir. 1995); Cuddington v. Northern Ind. Public Serv. Co., 33 F.3d 813, 816 (7th Cir. 1994), there is contemporaneous conflicting authority even within this circuit. In Hightshue v. AIG Life Ins. Co., 135 F.3d 1144, 1148 (7th Cir. 1998), cited by Lande, the Seventh Circuit recognized that the insurer had an inherent conflict of interest "because of its interests as both claims administrator and insurer," without more. The court added that "[w]hen it is 'possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries.' " Id.

While we agree with Hightshue in principle, we feel constrained to follow the rule elaborated in the majority of the Seventh Circuit cases. Accordingly, "[w]e presume that a fiduciary is acting neutrally unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict. The existence of a potential conflict is not enough." Mers, 144 F.3d at 1020 (citations omitted).

Beyond Zurich's alleged dual role as administrator and insurer, Lande presents no evidence of a conflict of interest other than the fact that Lande's claim was denied, arguably in contradiction of the plain language of the Plan. If a purported wrongful denial of a claim were sufficient evidence of a conflict of interest, we would be

constrained to find such a conflict in virtually every otherwise triable 502(a)(1)(B) case. Without more – for example, evidence that Lande's benefits would constitute a large expenditure in relation to Zurich's assets, see Mers, 144 F.3d at 1020-21, or that the company is about to go out of business and is therefore indifferent to the effects of wrongful denials on its reputation, see Gallo, 102 F.3d at 921 – we must grant the Plan Administrator's decision the deference due it under a standard arbitrary and capricious test. That is, we will reverse the Administrator's decision only if it was "downright unreasonable." Donato v. Metropolitan Life Ins. Co., 19 F.3d 375, 381 (7th Cir. 1994).

**B. Reasonableness of denial of benefits**

While arbitrary and capricious review is highly deferential, we will not hesitate to find an administrator's denial of benefits unreasonable where it controverts the plain meaning of the ERISA plan. Swaback v. American Info. Techs. Corp., 103 F.3d 535, 540 (7th Cir. 1996). Lande argues that the Plan Administrator's decision did just that. In support of his position, Lande argues that under section 1.21(b)(ii) of the Plan, he was to be credited hours of service for "each working day during which the Employee is eligible for disability benefits under Title II of the Federal Social Security Act." Because Lande has been eligible for, and receiving, federal disability benefits since 1986, he argues that he is entitled to thirteen years of additional credited service under the plan.

While the Plan might be read as Lande suggests, we find that the Plan Administrator's decision reflects a reasonable alternative interpretation: Section 1.21, relied on by Lande, describes the computation of Credited Service for Zurich employees who are only *temporarily* unable to attend work, while section 4.03(e) addresses the situation where a Plan participant becomes totally and permanently disabled. Under section 4.03(e), such a permanently disabled participant may still be entitled to accrue additional Credited Service, but only when he has completed ten years of continuous service with Zurich. Lande worked for Zurich for little more than a month before he became disabled.

We will not disturb the Plan Administrator's decision simply because Lande's contrary interpretation of the Plan terms is also possible. Russo v. Health Welfare & Pension Fund, 984 F.2d 762, 766 (7th Cir. 1993). Accordingly, we grant summary judgment in favor of Zurich on Lande's ERISA claim.

## II. Common law claims

Zurich argues that Lande's common law claims are either pre-empted, if they are state claims, or are adequately addressed, if they are federal claims, by ERISA. Lande does not address this aspect Zurich's motion or attempt to link evidentiary facts to any of its non-ERISA causes of action. Furthermore, we agree that Zurich's pre-emption

and federal common law arguments are correct as a matter of law. We therefore grant summary judgment for Zurich on all of Lande's common law claims.

## CONCLUSION

For the foregoing reasons, we deny Lande's motion for summary judgment in its entirety and grant summary judgment in favor of Zurich on all claims.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: September 21, 2000